**In the Matter of Marvin D. REIER, Debtor.**

**George W. LEDFORD Chapter 7 Trustee, Movant,**

**v.**

**FARMERS STATE BANK AND TRUST COMPANY, Respondent.**

**Bankruptcy No. 3–84–00415.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Oct. 2, 1985.

Townsend Foster, Troy, Ohio, for debtor.

Scott D. Rudnick, Greenville, Ohio, for respondent.

Geo. W. Ledford, Englewood, Ohio, Trustee.

## DECISION AND ORDER

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon an "Objection to Claim" filed by the Chapter 7 Trustee in the bankruptcy case of Marvin D. Reier, Case No. 3–84–00415. The trustee objected to the allowance of the claim of Farmers State Bank and Trust Company ("Bank") as a secured claim on the ground that the Bank failed to file a financing statement with the Secretary of State for the State of Ohio as provided in section 1309.38 of the Ohio Revised Code.

## FACTS

On July 8, 1985 a trial was held before the court on the trustee's objection and the court makes the following findings of fact:

The only witness appearing for either party was David D. Shives, who is a cashier for the Bank and whose duties include making loans to customers of the Bank.

On August 9, 1983 the Bank loaned the sum of $9,100.00 to the debtor, Marvin D. Reier dba Rainbow Industries, who signed a note (Defendant's Exhibit 1) in the presence of Mr. Shives and granted a security interest to the Bank in the following items, which the debtor was in the process of purchasing:

1983 Eagle 2 horse deluxe trailer

1983 Eagle 20 foot stock trailer

1983 Eagle stock trailer

1983 Eagle 17 foot stock combination trailer

All loan documents were prepared by the Bank and an "X" was inserted in a block on the security agreement indicating that the collateral was to be used for "Business" purposes. The blocks for "Personal" and "Agricultural" purposes were left unmarked.

Mr. Shives testified that although a financing statement (Defendant's Exhibit 6) was filed with the Recorder's Office for Darke County, Ohio, no financing statement was filed with the Secretary of State for the State of Ohio. It was the Bank's belief, based upon the advice of counsel, that the collateral involved "agricultural products" and, therefore, no dual filing was necessary.

On cross-examination Mr. Shives testified that the business of the debtor, Mr. Reier, consisted of building and constructing flatbed trailers, horse trailers, farm equipment, and other trailers for the purpose of transporting livestock and that the debtor also resold trailers. The loan of August 9, 1983 was made, according to Mr. Shives, for "display purposes." Mr. Reier was preparing to attend a county fair and needed to purchase the trailers in order to display what he was capable of building. It was also Mr. Shives' testimony that the debtor's place of business was located in Darke County, Ohio and that the debtor was not engaged in farming and was not a farmer.

## CONCLUSIONS OF LAW

Although it is clear that a valid security agreement was created by the debtor, there remains the question of whether the Bank properly perfected its security interest. Specifically, the issue is whether the Bank was required to file a financing statement with the Secretary of State for the State of Ohio in order to perfect its security interest in the debtor's stock trailers.

### I. *Classification of the Collateral*

Prior to determining where a creditor is required to file financing statements, it is necessary to decide what type of collateral is involved. Section 1309.07 of the Ohio Revised Code reads as follows:

Goods are:

(A) "consumer goods" if they are used or bought for use primarily for personal, family, or household purposes;

(B) "equipment" if they are used or bought for use primarily in business, including farming or a profession, or by a debtor who is a non-profit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products, or consumer goods;

(C) "farm products" if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in the unmanufactured states, such as ginned cotton, wool-clip, maple syrup, milk, and eggs, and if they are in the possession of a debtor engaged in raising, fattening, grazing, or other farming operations. If goods are farm products they are neither equipment nor inventory.

(D) "inventory" if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process, or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment.

OHIO REV.CODE ANN. § 1309.07 [U.C.C. § 9–109] (Page 1979).

Clearly, the debtor's stock trailers are neither "consumer goods" nor are they "farm products." Because of the nature of the testimony regarding the debtor's business, it is difficult to determine whether the collateral is "equipment" or "inventory." While Mr. Shives testified that the debtor was in the business of reselling trailers, which leads to a conclusion that the trailers were part of the debtor's "inventory," he also stated that the debtor required these particular trailers for "display purposes." If the trailers were to serve merely as samples of the debtor's craftsmanship, a classification of the collateral as equipment would be supportable. The court is well aware that these statutory classes of goods are mutually exclusive, *see, e.g. In re Houts,* 31 U.C.C.Rep. Serv. 338 (D.N.D.N.Y.1981); *Nat'l Bank of Commerce v. First Nat'l Bank & Trust Co. of Tulsa,* 446 P.2d 277 (Okla.1968), but the evidence before the court is simply inadequate to permit a specific finding of whether the collateral is equipment or inventory. In any event, under the factual pattern of the instant case, the precise classification is immaterial.

## II. *Where to File*

With the exception of three situations the proper place to file a financing statement in order to perfect a security interest in the State of Ohio is "in the office of the secretary of state and, in addition, if the debtor has a place of business in only one county of this state, also in the office of the county recorder of such county,...." OHIO REV.CODE ANN. § 1309.38(A)(4) [U.C.C. § 9–401] (Page Supp.1984).

The first and third exceptions to this general rule of filing concern consumer goods and timber or minerals and are obviously inapplicable to the present case. The Bank contends, however, that the second exception is applicable:

(A) The proper place to file in order to perfect a security interest is as follows:

(1) ....

(2) when the collateral is equipment used in farming operations ..., then in the office of the county recorder in the county of the debtor's residence ...

(3) ....

OHIO REV.CODE ANN. § 1309.-38(A)(2) [U.C.C. § 9–401] (Page Supp. 1984).

If the debtor's property is classified as inventory, then of course, neither of the three exceptions apply and the Bank should have filed a financing statement with the Secretary of State for the State of Ohio.

Assuming *arguendo* that the debtor's stock trailers are properly classified as equipment, the equipment must be "equipment used in farming operations" for the creditor to benefit from the second exception, *supra.*

In classifying goods and in determining whether equipment is used in farming operations, case law draws a distinction between *intended use* and *actual use* of the collateral. *See, In re Yeager Trucking,* 29 B.R. 131 (Bankr.Colo.1983); *North Ridge Farms, Inc. v. Trimble,* 37 U.C.C.Rep.Serv. 1280 (Ky.Ct.App.1983); *In re ASW III Builder-Contractor, Inc.,* 12 B.R. 29 (Bankr.E.D.Va.1981); *In re Collins,* 3 B.R. 144 (Bankr.S.C.1980); *In re Cahoon,* 9 U.C.C.Rep.Serv. 535 (Bankr.E.D.Tenn.1971); *In re La Rose,* 7 U.C.C.Rep.Serv. 964 (Bankr. Conn.1970); *In re Leiby,* 1 U.C.C.Rep.Serv. 428 (Bankr.E.D.Pa.1962).

A majority of courts in determining whether equipment is used in farming operations look at the use for which equipment was purchased or the use actually made of the equipment. The *actual* use test seems the proper criterion for determining whether equipment is 'used in farming operations.' *In re Butler,* 3 B.R. 182, 184 (Bankr.E.D.Tenn.1980).

This court agrees with the majority of courts that it is the use of the equipment which is controlling and not its intrinsic or potential nature. "[T]he same collateral may be classified differently in the hands of different owners." *North Ridge Farms, Inc. v. Trimble, supra* at 1288. However, in the instant matter, this court

is not required to resolve the murky question of whether the debtor's intended use of the collateral or his actual use is determinative in a classification of goods. Here, both uses appear to be identical. Mr. Shives testified that the debtor intended to use the stock trailers in his business for display purposes at a county fair, and there was no evidence introduced to indicate that the debtor did not in fact do so.

The Bank argues that the trailers are "designed for agricultural purposes" and requests this court to employ neither an "intended use" nor an "actual use" test, but rather to adopt the position of the court in *In re Burgess*, 30 B.R. 364 (Bankr.W.D. Okla.1983). In *Burgess* the court rejected both the intended use and the actual use tests and devised a "normal use" test:

> We hold that the proper consideration for determining place of filing is whether the particular equipment is *normally* used for farming. A tractor and plowing implements are equipment normally used for farming operations and therefore the proper place for filing would be the county of the debtor's residence.

> This rule rests upon a predictable approach to filing regarding equipment and other items generally associated with farming operations. *Id.* at 366.

Without an extensive discussion of the "normal use" test, this court merely notes that the *Burgess* decision is at this time a distinctly minority opinion and this court is not prepared to state unequivocally that stock trailers are "normally" used in farming operations. Such trailers are frequently used to transport animals in connection with a variety of operations not directly associated with farming. In addition, it appears sufficiently difficult for creditors to discern intended or actual uses of collateral, without imposing the necessity of divining what might be considered the "normal" use of collateral.

Therefore, whether the stock trailers of the debtor are classified as inventory or equipment, the Bank was required to file not only in the county of the debtor's business, but also with the Secretary of State for the State of Ohio.

### III. *Good Faith Filing*

In some instances strict compliance with the requirements of the filing statute is excused:

> A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of sections 1309.-01 to 1309.50 of the Revised Code, and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

OHIO REV.CODE ANN. § 1309.38(B) [U.C.C. § 9–401] (Page Supp.1984).

In cases where dual-filing of financing statements is required, however, the overwhelming weight of authority does not excuse the creditor from filing in both locations. *See, In re Karachi Cab Corp.*, 21 B.R. 822 (Bankr.S.D.N.Y.1982); *In re Hurt Enterprises, Inc.*, 321 F.Supp. 1307 (D.W. D.Va.1971); *In re Computer Careers Institute, Inc.*, 9 U.C.C.Rep.Serv. 930 (Bankr. E.D.Tenn.1971); *In re Hyde*, 6 U.C.C.Rep. Serv. 979 (Bankr.W.D.Mich.1969).

This also appears to be the result anticipated by the drafters of the Uniform Commercial Code.

> [T]he requirements of [dual-filing] are not complied with unless there is a filing in both offices specified; filing in only one of two required places is not effective except as against one with actual knowledge.

DRAFTSMEN'S COMMENT TO 1962 OFFICIAL TEXT, U.C.C. § 9–401, n. 5.

By statute a trustee in bankruptcy is not one with "actual knowledge," and in fact his powers are granted "without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a).

Nor does it appear that the Bank was faced with an undue burden. The Bank

was in a position to learn of the debtor's use of the collateral and in fact all evidence at the trial indicated that it possessed actual knowledge that the trailers were being used for business purposes and not for agricultural purposes. Where a creditor is uncertain as to the filing requirements, "the logical and better practice is for the creditor to file security interests in all possible places where filing might be required." *In re Burgess, supra* at 366.

For the foregoing reasons the security interest of Farmers State Bank and Trust Company in the trailers of the debtor, Marvin D. Reier, is unperfected and it is therefore ORDERED that the claims of Farmers State Bank and Trust Company be disallowed as secured and allowed as unsecured.